No. 33,271

THE STATE OF KANSAS, *Appellee,* v. J. J. SVOBODA, *Appellant.*

(76 P. 2d 814)

Opinion filed March 5, 1938.

*J. J. Schenck* and *C. P. Schenck,* both of Topeka, for the appellant.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Paul L. Harvey,* county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The defendant in this action appeals from the conviction and sentence under two counts of an information charging him with the violation of the provisions of the blue-sky law (G. S. 1935, 17-1201 to 17-1251).

The first count charged him with selling stock in a certain corporation, which corporation was not registered with the state corporation commission of the state of Kansas. The third count charged him with selling the same stock as an agent, and without being registered as an agent with the state corporation commission of the state of Kansas at the time of the sale. The portions of these two counts with which we shall be particularly concerned in this appeal are as follows: Count 1 charged that the defendant, J. J. Svoboda—

". . . on the —— day of June, A. D. 1935, did unlawfully, feloniously and willfully offer and sell certain securities, to wit: Shares of capital stock of the Harris Gold Mines, Incorporated, being evidenced by certificate No. 63,

dated August 16, 1935, and duly signed by the secretary and president of the Harris Gold Mines, Incorporated, to one Henry B. Cowles, said securities, then and there not being registered with the state corporation commission of the state of Kansas, and said sale, then and there being made in the course of repeated sales by the said J. J. Svoboda, of securities of the same issue, . . ."

Count 3 charges that the defendant, J. J. Svoboda—

". . . then and there being an agent, on the —— day of June, A. D. 1935, did unlawfully, feloniously and willfully offer and sell certain securities, and which securities are and were described as follows, to wit: Shares of capital stock of the Harris Gold Mines, Incorporated, being evidenced by certificate No. 63, dated August 16, 1935, and duly signed by the secretary and president of the Harris Gold Mines, Incorporated, to one Henry B. Cowles, the said J. J. Svoboda, then and there, at the time of said sale, not being registered as an agent with the State Corporation Commission of the state of Kansas, . . ."

The corporation named in the information was incorporated in Arizona, and it is not claimed that it was registered with the state corporation commission of Kansas. Neither is it claimed that the defendant was registered as an agent with the state corporation commission of Kansas. The blue-sky law makes it a crime to sell stock of an unregistered foreign corporation in Kansas (G. S. 1935, 17-1226), and also for anyone to sell such stock without being registered as an agent (G. S. 1935, 17-1233). Two exemptions mentioned in G. S. 1935, 17-1225, are proper for observation in connection with the evidence in this case. They are stated in subdivisions 1 and 8 of the section last above cited; subdivision 1 exempts an isolated sale and makes the statute apply only to repeated and successive sales. There was evidence introduced by the state as to other sales, but under the defense made this feature will not be important or controlling. Subdivision 8 is important because so much of the evidence refers to a one-twenty-fourth interest in a mine, which is more than a one-twenty-fifth interest. That subdivision is as follows:

"Any undivided interest or certificate based upon undivided interest in all royalties, oil leases, or mineral deeds, where the interest or certificate, based upon such interest offered for sale or sold to any purchaser, is more than one-twenty-fifth of the whole royalty, oil lease, or mineral deed, or any interest given in exchange for labor, material or machinery for use in the drilling of a well on said lease."

The rulings on preliminary motions and applications are assigned as error, but appellant's counsel frankly admit they might

not be reversible errors, and therefore we will pass them and take up the two main questions presented by the testimony, viz., the issuing of stock of a foreign corporation, organized for operating purposes, to the owner of a one-twenty-fourth interest in a mine for the lease of such one-twenty-fourth interest for operating purposes, as exempted by the blue-sky law; and second, the splitting up of such certificate of stock into smaller pieces at the request of the owner thereof as applied to a subdivided piece thereof retained by the owner.

It will be observed that the information names two dates: the —— day of June, 1935, as the date of the unlawful sale, and the 16th day of August, 1935, as the date borne by the certificate said to have been sold unlawfully. Of course, any time within two years before the filing of the information, which was on May 11, 1936, would be sufficient so far as time is concerned, but the evidence seems to show a purpose in using both dates. It showed that certificate No. 16 of the same company was issued on June 20, 1935, to Henry B. Cowles, trustee, for 10,000 shares, and that certificate No. 63, issued nearly two months later, was a part of the division of certificate No. 16 originally issued, and was for 2,000 shares.

The evidence showed Maude and Ralph Harris, of Wichita, Kan., were the owners of a group of gold mines in Arizona, and undertook to sell units therein of the one-twenty-fourth interest; that in the fall or winter of 1934 Henry B. Cowles met the defendant, J. J. Svoboda, shortly after the defendant became interested in the Arizona gold mines, and defendant showed him numerous letters and documents signed by the dean of the School of Mines at the state university at Lawrence, Kan., written after he had visited and inspected the mines, and giving the results of his examination and inspection thereof and commending them very highly as gold mines. Mr. Cowles testified that he paid the defendant $105 in cash and turned over to him several certificates of stock in other companies which were to be delivered to Mr. Harris or be sold and the proceeds given to him for the purchase of an undivided one-twenty-fourth interest in the Harris gold mines, which was to cost $10,000. On March 25, 1935, there was issued by Maude and Ralph Harris to H. B. Cowles, trustee, an assignment of an undivided one-twenty-fourth interest in the Arizona gold mines. The following question and answer are a part of Mr. Cowles' testimony concerning this transaction:

"Q. Did you have any conversation with Mr. Svoboda with reference to any stock which you would get in these Harris gold mines? A. When we were

having that transaction there was no stock mentioned, and I didn't know anything about any stock being issued until the first directors' meeting. . ."

The testimony also showed that two receipts were given by the defendant to Mr. Cowles for certain certificates of stock, one dated May 16, 1935, and the other June 24, 1935. Mr. Cowles further testified that when he bought the one-twenty-fourth interest he did not know anything about any corporation, that up to the time of the directors' meeting on June 20, 1935, he did not know about it; that the defendant never talked to him about buying any stock in a gold mine, but that he explained to him "that he wasn't selling stock, but was selling an interest"—a one-twenty-fourth interest in the mine, and that was what he thought he was getting and did get; that the defendant told him that the stock in the operating company had no value and could not be sold to anybody, because it was worthless, and the only thing of value was the interest—the one-twenty-fourth interest.

Testimony in the case shows that on the 8th of March, 1935, an application was made to the charter board of the state of Kansas for a charter, but that was abandoned, and the Harris Gold Mines, Incorporated, was formed and organized in Arizona on March 23, 1935.

On June 20, 1935, Mr. H. B. Cowles applied to the board of directors of the Harris Gold Mines, Incorporated, to lease the one-twenty-fourth interest which he held as trustee, and his request was granted, and certificate No. 16 of that corporation, which is shown to be an operating corporation only, was issued by the proper officers in the usual manner to Mr. Cowles for 10,000 shares. The evidence of Mr. Cowles further showed that the certificates of stock which he gave to the defendant to purchase the one-twenty-fourth interest in the Arizona gold mines were insufficient in value to pay Maude and Ralph Harris the full amount of the $10,000, that they were sufficient to pay only $7,000 or 70 percent of the purchase price of this one-twenty-fourth interest. In this connection Mr. Cowles stated that he understood that he was to get as much interest in the production company as he had in the Harris Gold Mining Company.

When asked about the surrender of this certificate No. 16 for 10,000 shares and procuring a division thereof into smaller amounts, namely, two for 2,500 shares and one for 2,000 shares, making 7,000 shares in his own name and 3,000 shares in other names, Cowles said, "I surrendered that and got as much in the production com-

pany as I had in that." That was 70 percent of the one-twenty-fourth interest. He also said that he had handed the secretary a list of the names of those who owned or would own 30 percent of the one-twenty-fourth interest and the proportionate amounts that each owned. When asked if the defendant had anything to do with the surrendering of the 10,000 shares of stock and issuing these three certificates he answered that it was done by the secretary at the request of the witness. He further answered that he understood there wasn't any profit in this corporation, but the profits would go to the owners of the one-twenty-fourth interest; that he received the certificate for the 10,000 shares on June 20, 1935, and later turned that certificate back to the company for these other certificates—7,000 shares being issued to him, which included certificate No. 63 for 2,000 shares, dated August 16, 1935; that he never got anything from Mr. Svoboda in the whole transaction except the one-twenty-fourth interest, and that he did not pay anyone anything for certificate No. 63 for 2,000 shares.

The evidence showed the stock in the operating company was not given in connection with the sale of the interests in the mines, but was issued to the holders of a one-twenty-fourth interest in the mines if the owner thereof desired to lease the interest to the operating company, but the owners of the interests would receive the same income whether they leased or not. Nineteen such units had been leased and five had not.

The state calls our attention to the following decisions which have reference to a bonus in connection with a financial transaction: *State v. Harper,* 137 Kan. 695, 22 P. 2d 454; *State v. Dobson,* 140 Kan. 445, 27 P. 2d 10; and *State v. MacLean,* 142 Kan. 215, 46 P. 2d 879; and also to the fact that the blue-sky statute does not exempt any certificate given as a bonus.

". . . Any security given or delivered as a bonus with any sale of securities, as such sale is herein defined, or with any other thing, shall be conclusively presumed to constitute a part of the subject of such sale and to have been sold for value." (G. S. 1935, 17-1223 [2].)

We have no hesitancy in concluding from the evidence in this case, considered under the definition of bonus given in the statute and the interpretation of the term in the decisions above cited, that not any of the certificates of the operating or production company that came into the hands of Henry B. Cowles was a bonus or a part of the subject of the sale.

The evidence does not show that the first certificate by the mining company to Henry B. Cowles, trustee, was issued as a bonus to the sale of the one-twenty-fourth undivided interest in the mines sold by Harris to Cowles, nor does it show the defendant, as an agent, had anything to do with the issuance thereof for the lease of the interest. We know of no reason why a man owning stock in a corporation, either in his individual name or as trustee, cannot surrender the same and have it issued to him in smaller amounts, as was done in the issuance of certificate No. 63 for 2,000 shares. That could not possibly have been a sale to him by the defendant or the company when he already had and had surrendered the original and requested the issuing to him of this certificate for a smaller number of shares. There may be good reasons why he should not have had other certificates for a smaller number of shares issued to others for whom he was trustee, but that is not the charge here. This charge concerned only the issuance of the 2,000-share certificate to him, which could under no circumstances have been a sale. Much of the evidence of other witnesses than Mr. Cowles concerned the matter of the defendant selling to others small parts of this one-twenty-fourth interest purchased from Harris, which may in fact have been a violation of the statutory exemption, and even the issuance of a corresponding portion of the stock in the operating company may also have been unlawful under the statute, but again we must say, as before, that we are limited to the one charge named in the information.

It is said in 31 C. J. 845:

"Under an indictment charging a particular offense, a conviction cannot be had upon evidence of another and distinct offense. Defendant can be convicted only of the crime charged, or of any inferior degree, or of an attempt, or of any crime included in that charged. . . A conviction cannot be had on evidence of another offense of the same kind committed on the same day but not identical with that charged."

Much feeling was also manifested by some witnesses as to the misrepresentations and the losses sustained, which probably led the trial court to give a definite instruction covering both these points, which was as follows:

"Evidence has been introduced in this case with reference to other transactions regarding the sale of interests or units in the gold mine, and with reference to the amounts paid to the defendant therefor; and also certificates of stock issued in the Harris Gold Mines, Incorporated, to such interest or unit holders.

"You are instructed that under the charge contained in the information, the defendant is not on trial for the sale of such interests in the gold mine itself, nor is he being tried for defrauding anyone, nor obtaining money under false pretenses, or any crime other than that set forth in the information, and you are hereinafter instructed as to the purposes for which such evidence is to be considered by you."

In closing, one other matter is deserving of consideration, and that is as to the defendant's being an agent of the operating company in the sale of its stock. Very often, agency is established by the acts and conduct of the company, its officers and the alleged agent, but in the blue-sky law the term "agent" is specifically defined as follows:

" 'Agent' shall mean and include every person other than a broker, employed, appointed or authorized by an issuer or broker to do anything subject to the provisions of this act." (G. S. 1935, 17-1223 [6].)

All the evidence on the subject of the agency of the defendant, except his acts and conduct and that of the officers of the company, was positively to the effect that the defendant was never appointed or authorized to sell any shares of the company.

The statute may have been disregarded or violated by the defendant, but absolutely not in the manner or as to the sale with which he was charged.

The judgment is reversed and the cause is remanded with direction to set aside the verdict, sentence and judgment.

HARVEY J., not sitting.